# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

DENNIS BOLZE
dba CENTURION ASSET MANAGEMENT
dba ADVANCED TRADING SERVICES

        Debtor

Case No. 09-30075

G. WAYNE WALLS, TRUSTEE

        Plaintiff

    v.

GEORGE COCCHINI

        Defendant

Adv. Proc. No. 10-3049

G. WAYNE WALLS, TRUSTEE

        Plaintiff

    v.

ALBERT CECERE and
GRETCHEN CECERE

        Defendants

Adv. Proc. No. 10-3052

G. WAYNE WALLS, TRUSTEE

        Plaintiff

    v.

MARK WOLFF and
TINA WOLFF

        Defendants

Adv. Proc. No. 10-3058

G. WAYNE WALLS, TRUSTEE

        Plaintiff

    v.

DONALD CASON and
KIMBERLY CASON

        Defendants

Adv. Proc. No. 10-3059

G. WAYNE WALLS, TRUSTEE

    Plaintiff

    v.          Adv. Proc. No. 10-3061

JERARD MUSZIK and
CAROL MUSZIK

    Defendants

G. WAYNE WALLS, TRUSTEE

    Plaintiff

    v.          Adv. Proc. No. 10-3062

TOM HOWARD and
LEANN HOWARD

    Defendants

G. WAYNE WALLS, TRUSTEE

    Plaintiff

    v.          Adv. Proc. No. 10-3064

AMERICAN EAGLE FOUNDATION

    Defendant

G. WAYNE WALLS, TRUSTEE

    Plaintiff

    v.          Adv. Proc. No. 10-3068

STEVE COMPTON

    Defendant

G. WAYNE WALLS, TRUSTEE

    Plaintiff

    v.          Adv. Proc. No. 10-3070

STANLEY CHAMBERS and
NANCY CHAMBERS

    Defendants

G. WAYNE WALLS, TRUSTEE

    Plaintiff

v.                                                                                          Adv. Proc. No. 10-3072

EDWARD HAMPTON and
RENEE HAMPTON

    Defendants

G. WAYNE WALLS, TRUSTEE

    Plaintiff

v.                                                                                          Adv. Proc. No. 11-3001

THE MUSZIK FAMILY TRUST
and CAROL MUSZIK, TRUSTEE

    Defendants

## MEMORANDUM ON JOINT MOTION
## FOR PARTIAL SUMMARY JUDGMENT

APPEARANCES:    BAILEY & BAILEY, PLLC
    Robert M. Bailey, Esq.
    Post Office Box 2189
    Knoxville, Tennessee 37901-2189
    Attorneys for Plaintiff

    QUILLING SELANDER LOWNDS WINSLETT & MOSER, P.C.
    Michael J. Quilling, Esq.
    2001 Bryan Street
    Suite 1800
    Dallas, Texas 75201
    THE NEAL LAW FIRM
    John M. Neal, Esq.
    Post Office Box 51930
    Knoxville, Tennessee  37950
    Attorneys for Defendants

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

These eleven adversary proceedings are before the court upon the Complaints filed by the Plaintiff between June 24, 2010, and January 6, 2011, seeking to recover pre-petition transfers made by the Debtor to the respective Defendants pursuant to 11 U.S.C. § 548 (2006), 11 U.S.C. § 550 (2006), Tennessee Code Annotated § 66-3-101 (2004), and/or the Tennessee Uniform Fraudulent Transfer Act (2004). Each of the Defendants has filed an Answer, raising a number of affirmative defenses. Pursuant to an Agreed Order Granting Motion to Consolidate Pre-Trial Management (Pre-Trial Management Order) entered on January 6, 2011, the adversary proceedings were consolidated for pre-trial management.[1]

On February 7, 2011, ten of the consolidated Defendants named in the caption[2] filed a Joint Motion for Partial Summary Judgment (Joint Motion), accompanied by a brief and the Statement of Material Facts in Support of Defendants' Joint Motion for Partial Summary Judgment (Statement of Material Facts) as required by E.D. Tenn. LBR 7056-1, as well as the following exhibits: (1) George Cocchini's Declaration in Support of Motion for Partial Summary Judgment dated January 20, 2011; (2) Al Cecere's Declaration in Support of Motion for Partial Summary Judgment dated January 25, 2011; (3) Mark Wolff's Declaration in Support of Motion for Partial Summary Judgment dated January 20, 2011; (4) Donald Cason's Declaration in Support of Motion for Partial Summary Judgment dated January 20, 2011; (5) Carol Muszik's Declaration in Support of Motion

---

[1] Also included in the Pre-Trial Management Order was an eleventh adversary proceeding, No. 10-3060, styled G. Wayne Walls, Trustee v. Eagle River USA, LLC. A twelfth adversary proceeding, No. 11-3001, styled G. Wayne Walls, Trustee v. The Muszik Family Trust and Carol Muszik, Trustee, was consolidated for pre-trial management with the other eleven adversary proceedings pursuant to the Agreed Order to Consolidate for Pre-Trial Management entered in that adversary proceeding on April 29, 2011.

[2] Eagle River USA, LLC, the Defendant in Adv. Proc. No. 10-3060, did not join the Joint Motion. The Defendants in Adv. Proc. No. 11-3001, The Muszik Family Trust and Carol Muszik, Trustee, joined the Joint Motion pursuant to the Agreed Scheduling Order Relating to the Muszik Family Trust entered on May 16, 2011. *See supra* n.1.

for Partial Summary Judgment dated January 20, 2011; (6) Tom Howard's Declaration in Support of Motion for Partial Summary Judgment dated January 22, 2011; (7) American Eagle Foundation's Declaration in Support of Motion for Partial Summary Judgment dated January 25, 2011, executed by its President, Al Cecere; (8) Steve Compton's Declaration in Support of Motion for Partial Summary Judgment dated January 21, 2011; (9) Stanley Chambers' Declaration in Support of Motion for Partial Summary Judgment dated January 19, 2011; and (10) Edward Hampton's Declaration in Support of Motion for Partial Summary Judgment dated January 19, 2011.[3]

The Plaintiff did not file a response to the Joint Motion or the Statement of Material Facts. Accordingly, pursuant to E.D. Tenn. LBR 7056-1(b), the material facts set forth in the Statement of Material Facts are deemed admitted, and in accordance with E.D. Tenn. LBR 7007-1, the court considers the Joint Motion as being unopposed by the Plaintiff.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(H) (2006).

I

In their Joint Motion, the Defendants aver that controlling law makes it clear that the total investments made by them to the Debtor are an equal exchange of value for the returns they received from him up to the value of their investments and that they are entitled to judgment as a matter of law on that issue, leaving only the issue of whether they acted in good faith.  For the purposes of the

---

[3] The Defendants in Adv. Proc. No. 11-3001, The Muszik Family Trust and Carol Muszik, Trustee, did not supplement the Statement of Material Facts to include facts specific to them, nor did they file any affidavits or exhibits in support of the Joint Motion. *See supra* n.2.

5

Joint Motion, the following facts are not in dispute.[4] An Involuntary Petition commencing the Debtor's Chapter 7 bankruptcy case was filed on January 9, 2009, and the Plaintiff was appointed Chapter 7 Trustee pursuant to an Order entered on January 15, 2009. The Order for Relief was subsequently entered by default on February 5, 2009. Prior to the bankruptcy filing, the Debtor, through Centurion Asset Management and Advanced Trading Services, claimed to be engaged in purchasing commodities and other investments for investors. STMT. OF MATERIAL FACTS at ¶ 1. He was, however, engaged in a Ponzi scheme and used Centurion Asset Management and Advanced Trading Services to transfer money to and from himself and investors, including the Defendants. STMT. OF MATERIAL FACTS at ¶¶ 3-4.

### A. George Cocchini, Adv. No. 10-3049

Mr. Cocchini paid $40,000.00 to the Debtor through Centurion Asset Management. STMT. OF MATERIAL FACTS at ¶ 5; COCCHINI DECL. (EX. 1) at ¶¶ 1, 2. On June 24, 2010, the Plaintiff filed a Complaint against Mr. Cocchini to recover $74,628.57, the amount he avers was transferred to Mr. Cocchini by the Debtor on or about June 27, 2007, rendering Mr. Cocchini a "net winner" in that he paid less to the Debtor than he received. STMT. OF MATERIAL FACTS at ¶¶ 6, 7, 11, 12; COCCHINI DECL. (EX. 1) at ¶¶ 3, 4.

---

[4] The court deems paragraphs 1-4 in section II. Statements of Facts set forth in the Statement of Material Facts applicable to all Defendants, including The Muszik Family Trust and Carol Muszik, Trustee, because they have application to the Debtor and his bankruptcy case, generally. The remaining paragraphs 5-12 of the Statement of Material Facts have application solely to the ten Defendants who originated the Joint Motion. As previously noted, the Statement of Material Facts was not supplemented to include facts specific to The Muszik Family Trust and Carol Muszik, Trustee.

6

### B. Albert and Gretchen Cecere, Adv. No. 10-3052

The Ceceres paid approximately $239,432.00 to the Debtor through Centurion Asset Management between April 2002 and June 2006. STMT. OF MATERIAL FACTS at ¶ 5; CECERE DECL. (EX. 2) at ¶¶ 1, 2. On July 1, 2010, the Plaintiff filed a Complaint against the Ceceres to recover $350,650.00, the amount he avers was transferred to them by the Debtor between January 2005 and April 2008, rendering the Ceceres "net winners" in that they paid less to the Debtor than they received. STMT. OF MATERIAL FACTS at ¶¶ 6, 7, 11, 12; CECERE DECL. (EX. 2) at ¶¶ 3, 4.

### C. Mark and Tina Wolff, Adv. No. 10-3058

The Wolffs paid $55,234.49 to the Debtor through Centurion Asset Management between March 2003 and June 2004. STMT. OF MATERIAL FACTS at ¶ 5; WOLFF DECL. (EX. 3) at ¶¶ 1, 2. The Wolffs also received an additional $29,691.47 from the Debtor or one of his alter egos that is not included in the Plaintiff's action, for total receipts of $55,353.11. STMT. OF MATERIAL FACTS at ¶ 8; WOLFF DECL. (EX. 3) at ¶ 3. On July 7, 2010, the Plaintiff filed a Complaint against the Wolffs to recover $25,661.64, the amount he avers was transferred to them by the Debtor between May 7, 2007 and December 17, 2008, rendering the Wolffs "net winners" in that they paid less to the Debtor than they received. STMT. OF MATERIAL FACTS at ¶¶ 6, 7, 11, 12; WOLFF DECL. (EX. 3) at ¶¶ 3, 4.

### D. Donald and Kimberly Cason, Adv. No. 10-3059

The Casons paid $626,600.00 to the Debtor through either Centurion Asset Management or Advanced Trading Services. STMT. OF MATERIAL FACTS at ¶ 5; CASON DECL. (EX. 4) at ¶¶ 1, 2. On July 7, 2010, the Plaintiff filed a Complaint against the Casons to recover $279,932.60, the amount he avers was transferred to them by the Debtor between September 9, 2005 and November 21, 2008,

rendering the Casons "net losers" in that they paid more to the Debtor than they received. STMT. OF MATERIAL FACTS at ¶¶ 6, 7, 9, 10; CASON DECL. (EX. 4) at ¶¶ 3, 4.

### E. Jerard and Carol Muszik, Adv. No. 10-3061

Ms. Muszik paid $905,000.00 to the Debtor through Centurion Asset Management between November 2007 and August 2008. STMT. OF MATERIAL FACTS at ¶ 5; MUSZIK DECL. (EX. 5) at ¶¶ 1, 2. On July 7, 2010, the Plaintiff filed a Complaint against the Musziks to recover $466,124.57, the amount he avers was transferred to them by the Debtor between December 27, 2007 and November 5, 2008, rendering the Musziks "net losers" in that they paid more to the Debtor than they received. STMT. OF MATERIAL FACTS at ¶¶ 6, 7, 9, 10; MUSZIK DECL. (EX. 5) at ¶¶ 3, 4. Ms. Muszik, however, has sworn that Mr. Muszik has no interest in any of the payments or returns. MUSZIK DECL. (EX. 5) at ¶ 1.

### F. Tom and Leann Howard, Adv. No. 10-3062

The Howards paid $151,251.09 to the Debtor through Centurion Asset Management between July 2002 and October 2004. STMT. OF MATERIAL FACTS at ¶ 5; HOWARD DECL. (EX. 6) at ¶¶ 1, 2. On July 8, 2010, the Plaintiff filed a Complaint against the Howards to recover $270,000.00, the amount he avers was transferred to them by the Debtor between December 12, 2005 and December 17, 2008, rendering the Howards "net winners" in that they paid less to the Debtor than they received. STMT. OF MATERIAL FACTS at ¶¶ 6, 7, 11, 12; HOWARD DECL. (EX. 6) at ¶¶ 3, 4.

### G. American Eagle Foundation, Adv. No. 10-3064

American Eagle Foundation, a non-profit organization, paid $1,669,000.00 to the Debtor through Advanced Trading Services between April 2002 and July 2008. STMT. OF MATERIAL FACTS at ¶ 5; CECERE DECL. (EX. 7) at ¶¶ 1-3. On July 8, 2010, the Plaintiff filed a Complaint against American Eagle Foundation to recover $814,000.00, the amount he avers was transferred to it by the Debtor between January 10, 2005 and November 21, 2008, rendering American Eagle Foundation a "net loser" in that it paid more to the Debtor than it received. STMT. OF MATERIAL FACTS at ¶¶ 6, 7, 9, 10; CECERE DECL. (EX. 7) at ¶¶ 4, 5.

### H. Steve Compton, Adv. No. 10-3068

Mr. Compton paid $30,000.00 to the Debtor through either Centurion Asset Management or Advanced Trading Services. STMT. OF MATERIAL FACTS at ¶ 5; COMPTON DECL. (EX. 8) at ¶¶ 1, 2. On July 8, 2010, the Plaintiff filed a Complaint against Mr. Compton to recover $50,719.82, the amount he avers was transferred to Mr. Compton by the Debtor between January 10, 2005 and May 2, 2005, rendering Mr. Compton a "net winner" in that he paid less to the Debtor than he received. STMT. OF MATERIAL FACTS at ¶¶ 6, 7, 11, 12; COMPTON DECL. (EX. 8) at ¶¶ 3, 4.

### I. Stanley and Nancy Chambers, Adv. No. 10-3070

The Chambers paid $1,295,000.00 to the Debtor through Centurion Asset Management between July 2006 and March 2007. STMT. OF MATERIAL FACTS at ¶ 5; CHAMBERS DECL. (EX. 9) at ¶¶ 1, 2. On July 12, 2010, the Plaintiff filed a Complaint against the Chambers to recover $1,139,208.13, the amount he avers was transferred to them by the Debtor between January 12, 2007

and July 30, 2008, rendering the Chambers "net losers" in that they paid more to the Debtor than they received. STMT. OF MATERIAL FACTS at ¶¶ 6, 7, 9, 10; CHAMBERS DECL. (EX. 9) at ¶¶ 3, 4.

### J.  Edward and Renee Hampton, Adv. No. 10-3072

The Hamptons paid $445,000.00 to the Debtor through either Centurion Asset Management or Advanced Trading Services. STMT. OF MATERIAL FACTS at ¶ 5; HAMPTON DECL. (EX. 10) at ¶¶ 1, 2. On July 13, 2010, the Plaintiff filed a Complaint against the Hamptons to recover $130,000.00, the amount he avers was transferred to them by the Debtor between April 16, 2007 and November 3, 2008, rendering the Hamptons "net losers" in that they paid more to the Debtor than they received. STMT. OF MATERIAL FACTS at ¶¶ 6, 7, 9, 10; HAMPTON DECL. (EX. 10) at ¶¶ 3, 4.

### K.  The Muszik Family Trust and Carol Muszik, Trustee, Adv. No. 11-3001

The Plaintiff filed a Complaint against these Defendants on January 6, 2011, to recover $50,000.00. These Defendants offered no evidence in support of the Joint Motion.

### II

Rule 56 of the Federal Rules of Civil Procedure, amended effective December 1, 2010, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" with the procedures concerning summary judgment now requiring the following:

> (1) *Supporting Factual Positions*.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

>   stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) *Materials Not Cited*. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) *Affidavits or Declarations*. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c) (applicable in adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure).[5]

When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). As the moving parties, the Defendants bear the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material facts, that the Plaintiff's claims are factually unsupported, and controlling law makes it clear that the

---

[5] Courts were authorized, "insofar as just and practicable," to apply the December 1, 2010 amendments to Rule 56 to all pending motions. *See* Apr. 28, 2010 Sup. Ct. Order. As stated in the Notes of Advisory Committee on the 2010 amendments, the standard for granting summary judgment has not changed, and "[t]he amendments will not affect continuing development of the decisional law construing and applying [the standard]."

Defendants' investments constitute an equal exchange of value for the returns received up to the investment amounts, thus entitling the Defendants to judgment as a matter of law on that narrow legal issue. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001).

The burden then shifts to the Plaintiff, the nonmoving party, to prove that there are genuine disputes of material fact for trial; however, reliance solely on allegations or denials contained in the pleadings or a "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). The facts and all resulting inferences are viewed in a light most favorable to the non-movant, and the court decides whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 106 S. Ct. at 1356 (citations omitted).

### III

In each adversary proceeding, the Plaintiff seeks to avoid the transfers paid from the Debtor to each of the Defendants, to be recovered for the benefit of the estate, relying, under the Bankruptcy Code, upon the following statutes:

> (a)(1)  The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

11 U.S.C. § 548(a)(1).[6] In response, each of the Defendants has raised as an affirmative defense subsection (c):

> (c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c).

For the purposes of § 548, the Bankruptcy Code defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor[.]" 11 U.S.C. § 548(d)(2)(A); *see also Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 319 B.R. 134, 138 (Bankr. E.D. Ky. 2004) (defining "value" as "that which provides an economic benefit, either direct or indirect, to the debtor."). Courts generally compare the value of the property transferred with the value of what the

---

[6] Correspondingly, "to the extent that a transfer is avoided under section . . . 548 . . ., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from— (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]" 11 U.S.C. § 550(a)(1).

13

debtor received to ascertain whether there was a reasonably equivalent value, although a dollar-for-dollar equivalent is not required. *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 707 (6th Cir. 1999); *Butler Aviation Int'l v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1125-26 (5th Cir. 1993); *see also Allard v. Flamingo Hilton (In re Chomakos)*, 69 F.3d 769, 771 (6th Cir. 1995) (holding that "the contractual right to receive payment in the event that it turns out well is obviously worth something.").

The Plaintiff has additionally asserted that the transfers to each of the Defendants may be avoided under the Tennessee fraudulent conveyance statute, which states as follows:

> Every gift, grant, conveyance of lands, tenements, hereditaments, goods, or chattels, or of any rent, common or profit out of the same, by writing or otherwise; and every bond, suit, judgment, or execution, had or made and contrived, of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures; or to defraud or to deceive those who shall purchase the same lands, tenements, or hereditaments, or any rent, profit, or commodity out of them, shall be deemed and taken, only as against the person, such person's heirs, successors, executors, administrators, and assigns, whose debts, suits, demands, estates, or interest, by such guileful and covinous practices, shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, of any other matter or thing, to the contrary notwithstanding.

TENN. CODE ANN. 66-3-101. Finally, he has relied upon the Tennessee Fraudulent Transfer Act, first concerning transfers which are fraudulent as to present and future creditors:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > . . . .
>
> > (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TENN. CODE ANN. § 66-3-305, as well as those transfers which are fraudulent as to present creditors:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

TENN. CODE ANN. § 66-3-306(a). These causes of action involve similar questions of value, which is defined by Tennessee Code Annotated as follows:

> (a) Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.
>
> (b) For the purposes of §§ 66-3-305(a)(2) and 66-3-306, a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement.
>
> (c) A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is in fact substantially contemporaneous.

TENN. CODE ANN. § 66-3-304.

The sole issue for partial summary judgment is whether the Defendants' total investments paid to the Debtor were an equal exchange of value for the payments they received up to the amount

15

of their initial investments. With respect to this question, the case law is clear: "established principles of Ponzi scheme jurisprudence [state that] when facing fraudulent conveyance actions, investors may keep the principal amount of their investments, but they may not keep any profits from the scheme." *In re First Commercial Mgmt. Group, Inc.*, 279 B.R. 230, 236 (Bankr. N.D. Ill. 2002). Accordingly, in cases involving a Ponzi scheme, "the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers[.]" *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008); *see also Scholes v. Lehmann*, 56 F.3d 750, 757-58 (7th Cir. 1995) (stating that the investor was only being asked to "return the net profits of his investment—the difference between what he put in at the beginning and what he had at the end."); *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 857 (D. Utah 1987) (concluding that "to the extent the debtors' payments to a defendant merely repaid his principal undertaking, the payments satisfied an antecedent 'debt' of the debtors, and the debtors received 'value' in exchange for the transfers. Moreover, to the extent a transfer merely repaid a defendant's undertaking, the debtor received not only a 'reasonably equivalent value' but the exact same value—dollar for dollar."). "The policy justification is ratable distribution of remaining assets among all the defrauded investors. The 'winners' in the Ponzi scheme, even if innocent of any fraud themselves, should not be permitted to 'enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky.'" *Donell*, 533 F.3d at 770 (quoting *In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir. 1991)).

Based upon the record, the Statement of Material Facts, and the Declarations of the Defendants, with the exception of The Muszik Family Trust and Carol Muszik, Trustee, the

Defendants in Adv. Proc. No. 11-3001, as well as the Plaintiff's failure to oppose the Motion for Partial Summary Judgment, the court finds that there is no genuine dispute as to any material facts under which the Plaintiff can prevail as to the issue of equal exchange of value. The Defendants, again, with the exception of the Defendants in Adv. Proc. No. 11-3001, The Muszik Family Trust and Carol Muszik, Trustee, are entitled to partial summary judgment that, with respect to § 548(a)(1), as well as the Tennessee fraudulent conveyance statute and the Tennessee Uniform Fraudulent Transfer Act, each received value and reasonably equivalent value for the amount of his or her initial investment. As such, the Casons, Ms. Muszik, American Eagle Foundation, the Chambers, and the Hamptons, each identified and stipulated as "net losers," are entitled to judgment as a matter of law that they received value for the entire amounts that they received from the Debtor. The Defendants, Mr. Cocchini, the Ceceres, the Wolffs, the Howards, and Mr. Compton, are entitled to judgment as a matter of law that they received value up to the amounts that they invested with the Debtor. As to the remaining Defendants, The Muszik Family Trust and Carol Muszik, Trustee, the Joint Motion will be denied. All other issues with respect to the elements of whether the Plaintiff is entitled to avoid the transfers to the respective Defendants under 11 U.S.C. § 548(a)(1), Tennessee Code Annotated § 66-3-101, and the Tennessee Uniform Fraudulent Transfer Act remain to be decided.[7]

---

[7] It appears that resolution of the Joint Motion in favor of the Casons, Ms. Muszik, American Eagle Foundation, the Chambers, and Mr. Hampton is fully dispositive of the Plaintiff's claims and that the Complaints against these Defendants should be dismissed. However, rather than summarily dismiss these Complaints, the court will set a hearing on a date set forth in the Order, directing the Plaintiff to show cause why these five Complaints should not be dismissed.

A Judgment consistent with this Memorandum will be entered.

FILED:  July 13, 2011

                                      BY THE COURT

                                      */s/  RICHARD STAIR, JR.*

                                      RICHARD STAIR, JR.
                                      UNITED STATES BANKRUPTCY JUDGE